UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINALD WHITLEY,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>DR. ROSANA JAVATE,<br><br>　　　　Defendant. | Case No. 20-00680 BLF (PR)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING OTHER PENDING MOTION AS MOOT**<br><br>(Docket Nos. 30, 60) |

　　　　Plaintiff, a state prisoner, filed the instant *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against medical staff at the Salinas Valley State Prison ("SVSP"). Dkt. No. 1. The Court found the amended complaint, Dkt. No. 13, stated a cognizable claim under the Eighth Amendment and ordered Defendant Dr. Rosana Javate to file a motion for summary judgment or other dispositive motion. Dkt. No. 14.

　　　　Defendant Javate filed a motion pursuant to Rule 56 on the ground that undisputed material facts show that she is entitled to summary judgment on the merits and that she is entitled to qualified immunity. Dkt. No. 30. In support, Defendant filed declarations and exhibits.[1]  *Id.*  Plaintiff filed opposition along with a request for judicial notice of several

---

[1] In support of her summary judgment motion, Defendant Javate submits her declaration, Dkt. No. 30-1, along with the declarations of Dr. B. Feinberg, Dkt. No. 30-5, and counsel

exhibits submitted in support.[2]  Dkt. Nos. 35, 36.  Defendant filed a reply.  Dkt. No. 47.

For the reasons stated below, Defendant's motion for summary judgment is **GRANTED**.

## DISCUSSION

### I.  Statement of Facts[3]

Defendant Dr. Rosana Javate was Plaintiff's primary care physician ("PCP") at SVSP between September 2017 and January 2019.  Javate Decl. ¶ 4 (Dkt. No. 30-1); Cho Decl. ¶ 2 (Dkt. No. 30-3), Ex. A at 36:7-11, 37:11-13 (Dkt. No. 30-4).  Defendant saw Plaintiff on six occasions between September 2017 and September 2018, to treat him for chronic pain in his leg and foot from injuries he sustained after being shot 11 times in 2002.  *Id.*; Dkt. No. 13 at 3, 5.  During Defendant's course of treatment, Plaintiff continuously requested opiates.  Javate Decl. ¶ 5.  In response, Defendant repeatedly explained to Plaintiff that he did not meet the California Correctional Health Care Services' guidelines for such treatment.  *Id.*; Feinberg Decl. ¶ 11 (Dkt. No. 30-5), Ex. B at AGO 00010-00013 (Dkt. No. 30-6).  This was because Plaintiff was functional in a correctional setting, *i.e.*, able to ambulate and attend to his activities of daily living, and he

---

C. Hay-Mie Cho, Dkt. No. 30-3.  The declarations are accompanied by exhibits that contain authenticated copies of excerpts from Plaintiff's health care records, Dkt. Nos. 30-2, 30-6, and his deposition, Dkt. No. 30-4.

[2] Plaintiff's requests the Court take judicial notice of "attached Exhibits in accordance with Evidence Code § 452, subsection's (c) and (d), as records of any legislature, executive, and judicial department of the State of California and the United States."  Dkt. No. 36 at 1.  Plaintiff's exhibits contain copies of excerpts from his medical record and a copy of the CDCR's "California Correctional Health Care Services, Health Care Department Operations Manual."  Dkt. No. 36.  Defendant has filed no objection to these exhibits.  The request based on § 452 of the California Evidence Code is inappropriate since state evidentiary laws do not apply here.  Nevertheless, the Court finds good cause to grant the request under Fed. R. Evid. 201(b).  *See Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 999 (9th Cir. 2018) (court may notice an adjudicative fact if it is "not subject to reasonable dispute").

[3] The following facts are not disputed unless otherwise stated.

2

had a cane and orthotic shoes. *Id.*

Nevertheless, in response to Plaintiff's request, Defendant submitted three separate requests to appear before the Pain Review Committee ("Committee") between September 2017 and July 2018, to present Plaintiff's request for opiates. Javate Decl. ¶ 6. At that time, the Committee consisted of Darin Bright, D.O. (Chief Physician and Surgeon), primary care physicians, and staff from nursing, mental health, custody, and the pharmacy. *Id.* As an inmate-patient's PCP, Defendant Javate would appear on the inmate-patient's behalf, and present the inmate-patient's request for narcotics or opiates. *Id.* The Committee then evaluates the inmate-patient's charts and receives input from its members to ensure compliance with policies and procedures. *Id.* However, it is not guaranteed that the inmate-patient's case would be heard immediately. *Id.*

Defendant Javate first saw Plaintiff on September 20, 2017, after he arrived at SVSP from the Deuel Vocational Institute. *Id.* ¶ 7, Ex. A (Dkt. No. 30-2); Cho Decl. ¶ 2, Ex. A at 40:8-10; Feinberg Decl. ¶ 11, Ex. B at AGO 00010-00013. Among other conditions, Plaintiff complained of myalgia (pain in a muscle or group of muscles), neuralgia (pain caused by damaged or irritated nerves), and uncontrolled foot pain. Javate Decl. ¶ 7, Ex. A. Defendant obtained Plaintiff's medical history and found that he had been classified as Disability Impacting Placement Mobility ("DPM") and was approved for a cane. *Id.* Because Plaintiff said he lost his cane the previous day, Defendant ordered a replacement cane. *Id.*; Feinberg Decl. ¶ 11, Ex. B at AGO 00010-00013. Defendant also conducted a physical examination which revealed that Plaintiff had a left foot drop with amputation of his left great toe, fusion of all toes, and skin graft of medial aspect left tibia and fibula. Javate Decl. ¶ 7, Ex. A. Plaintiff also had plantar and dorsal heel spurs, mild to moderate mid and forefoot arthritis, and posttraumatic and postsurgical changes in the first and second toes. *Id.* Defendant discussed pain management with Plaintiff and encouraged him to lose weight to help him with his leg and foot pain. *Id.*; Feinberg Decl. ¶ 11, Ex. B at AGO 00010-00013. She also submitted a referral to an outside podiatrist and

3

ordered a baseline EKG (electrocardiogram test to record the electrical activity of the heart) to start him on Pamelor, a pain medication. *Id.*; Feinberg Decl. ¶ 11, Ex. B at AGO 00014. Plaintiff demanded morphine and Tylenol with codeine, but Defendant told him he did not qualify. *Id.*; Feinberg Decl. ¶ 11, Ex. B at AGO 00010-00013. Nevertheless, Defendant elected to send Plaintiff's case to the Committee to present his request for opiate treatment. *Id.*

Dr. Bright denied the podiatry referral because he wanted Plaintiff to be sent to orthotics department first. Javate Decl. ¶ 8; Feinberg Decl. ¶ 15, Ex. B at AGO 00015-00016. On October 10, 2017, Plaintiff received a new pair of orthotic shoes from the orthotics department, but he refused the ankle foot orthotic brace that was intended to help him with his foot drop and align his ankle and foot positions because it hurt his foot. *Id.*; Feinberg Decl. ¶ 15, Ex. B at AGO 00017.

On October 27, 2017, Plaintiff had a follow-up appointment with Defendant about the denial of the podiatry referral. Javate Decl. ¶ 9, Ex. B; Cho Decl. ¶ 2, Ex. A at 41:6-12, citing to Ex. D (Dkt. No. 30-4 at 25-27); Feinberg Decl. ¶ 16, Ex. B at AGO 00018-00021. Plaintiff stated that Pamelor did not offer any relief for his pain, which he said started from the bottom of his left foot and shot up to his hip. Javate Decl. ¶ 9, Ex. B. He further complained that walking and cold weather exacerbated his pain. *Id.* Therefore, Defendant increased Plaintiff's dosage to twice a day, ordered another EKG to ensure Plaintiff did not have any changes and emphasized the importance of weight loss. *Id.*; Feinberg Decl. ¶ 16, Ex. B at AGO 00018-00021. Defendant deferred the podiatry referral because she had increased Plaintiff's dosage and intended to monitor how he was doing with the new pair of orthotic shoes. Javate Decl. ¶ 9, Ex. B.

On March 6, 2018, Plaintiff had another appointment with Defendant after submitting a health care grievance for chronic pain, the ineffectiveness of Pamelor, and a

4

podiatry referral. *Id.* ¶ 10, Ex. C[4]; Cho Decl. ¶ 2, Ex. A at 41:22-24, citing Ex. E (Dkt. No. 30-4 at 28-30); Feinberg Decl. ¶ 17, Ex. B at AGO 00021-00023. Plaintiff stated that Pamelor and his new shoes were not helping and requested morphine and a podiatry referral. Javate Decl. ¶ 10; Feinberg Decl., Ex. B at AGO 00021-00023. Defendant submitted another request to appear before the Committee and another referral to a podiatrist. *Id.*; Feinberg Decl. ¶ 18, Ex. B at AGO 00024. Defendant also requested another EKG because Plaintiff had not completed the previous order. Javate Decl. ¶ 10; Feinberg Decl., Ex. B at AGO 00021-00023. Defendant again discussed the pain mediation guidelines with Plaintiff and explained that he did not qualify for opiate therapy. *Id.* In addition, because Plaintiff's pain was not improving despite proper footwear and the use of a cane, Defendant increased Plaintiff's morning dosage of Pamelor to 50 mg while maintaining the 25-mg dose in the afternoon. *Id.*

The podiatry referral request was approved, and Dr. Thornhill saw Plaintiff for a podiatry consultation on March 26, 2018. Feinberg Decl. ¶ 18, Ex. B at AGO 00025. Dr. Thornhill reviewed Plaintiff's history of chronic pain secondary to a distant history of trauma and debrided all areas of thickened skin and trimmed Plaintiff's toenails. *Id.* Dr. Thornhill did not issue any recommendations as to Plaintiff's pain medications, and discharged Plaintiff from the podiatry clinic, noting that a follow-up could be on an as-needed basis. *Id.* However, on March 27, 2018, Defendant elected to submit a request for a follow-up podiatry appointment for Plaintiff in three months' time. *Id.*, AGO 00026.

On June 25, 2018, Dr. Thornhill saw Plaintiff for a follow-up podiatry appointment. Feinberg Decl. ¶ 20, Ex. B at AGO 00028. Thickened skin was again debrided as well as toenail trimming. *Id.* Once again, Dr. Thornhill did not make any recommendations

---

[4] The progress notes filed under Exhibit C of Defendant Javate's declaration does not indicate the date on which these notes were taken. However, these notes are consistent with the copy of the progress notes for a March 6, 2018 examination by Defendant Javate, submitted with Dr. Feinberg's Declaration under Exhibit B at AGO 00021-00023 (Dkt. No. 30-6 at 24-26).

regarding Plaintiff's pain medication at that time.  *Id.*  Dr. Thornhill recommended a follow-up appointment on an as-needed basis or in three months' time.  *Id.*

On July 2, 2018, Defendant saw Plaintiff to address his complaints of chills and pain in his lower left extremity.  Javate Decl. ¶ 11, Ex. D**;** Cho Decl. ¶ 2, Ex. A at 43:16-22, citing to Ex. G (Dkt. No. 30-4 at 31-33); Feinberg Decl. ¶ 21, Ex. B at AGO 00029-00031.  Plaintiff had not complied with Pamelor, and again claimed that it did not assist him with his pain.  Javate Decl. ¶ 11, Ex. D.  Therefore, Defendant decided to have Plaintiff try Tegretol.  *Id.*; Feinberg Decl. ¶ 21, Ex. B at AGO 00029-00031.  Because Plaintiff complained of pain in his left calf, Defendant also ordered a venous doppler exam (an ultrasound technique evaluating blood flowing through a vessel) to check for a blood clot.  Javate Decl. ¶ 11, Ex. D.  She also made another request to appear before the Committee and another referral to a podiatrist.  *Id.*; Feinberg Decl. ¶ 21, Ex. B at AGO 00032.

On August 15, 2018, Defendant saw Plaintiff for complaints that his pain medication was ineffective, though he was only partially compliant with it, taking some morning and one evening dose in the prior week.  Javate Decl. ¶ 12, Ex. E; Cho Decl. ¶ 2, Ex. A at 43:23-25, 44:2-10, citing to Ex. H (Dkt. No. 30-4 at 34-37); Feinberg Decl. ¶ 22, Ex. B at AGO 00033-00036.  Defendant reviewed the venous doppler exam that was completed on August 8, 2018, which did not indicate deep vein thrombosis (deep vein clot).  Javate Decl. ¶ 12, Ex. E.  Plaintiff continued to push for opiate treatment, and Defendant again told him that he did not qualify because he was able to program and perform his activities of daily living.  *Id.*; Cho Decl. ¶ 2, Ex. A at 95:11-13; Feinberg Decl. ¶ 22, Ex. B at AGO 00033-00036.  At that juncture, Plaintiff had exhausted all formulary medication without relief, so Defendant decided to submit a nonformulary request for Gabapentin, and while waiting for approval, she ordered x-rays of Plaintiff's left hip, left lower leg, and left foot.  *Id.*; Cho Decl. ¶ 2, Ex. A at 95:24-25; Feinberg Decl. ¶ 22, Ex. B at AGO 00033-00036.  Defendant also offered Elavil to Plaintiff, but he refused it because

6

it was a heat medication. Javate Decl. ¶ 12, Ex. E. She repeated her emphasis on weight loss to alleviate Plaintiff's pain. *Id.*; Cho Decl. ¶ 2, Ex. A at 96:22-23. Dr. Bright denied the request for Gabapentin on August 16, 2018. Cho Decl. ¶ 2, Ex. A at 95:25, 96:1; Feinberg Decl. ¶ 23, Ex. B at AGO 00037-00039.

The x-rays were taken on August 24, 2018. Feinberg Decl. ¶ 24, Ex. B at AGO 00040-00042. They indicated mild arthritis in his left hip, a chronic fibular deformity in his lower leg, and that his left foot x-rays were unchanged in comparison to those taken on March 28, 2017. *Id.*

On September 9, 2018, Defendant received a phone call from a nurse, stating Plaintiff was complaining of left ankle pain and swelling sustained from a fall he suffered earlier that evening. Javate Decl. ¶ 13, Ex. F; Feinberg Decl. ¶ 25, Ex. B at AGO 00043-00045. Defendant instructed Plaintiff to continue taking Naproxen, and over-the-counter medication that Plaintiff had already obtained himself. *Id.* Defendant also gave orders for Plaintiff to receive an injection of Toradol, a nonsteroidal anti-inflammatory pain medication, and to apply ice. *Id.* At Defendant's direction, Plaintiff underwent an x-ray the following morning. *Id.*

On September 13, 2018, Defendant saw Plaintiff for pain in his left ankle due to the fall and to follow-up on the x-ray. *Id.* ¶ 14, Ex. G; Cho Decl. ¶ 2, Ex. A at 44:17-25, 45:1, 97:20-25, citing Ex. I (Dkt. No. 30-4 at 38-42); Feinberg Decl. ¶ 26, Ex. B at AGO 00046-00050. Plaintiff said his pain level remained unchanged and continued to push for narcotics. Javate Decl. ¶ 14, Ex. G. He also requested an orthotic shoe replacement, for which a request was placed on September 7, 2018, and approved. *Id.* His physical examination showed that he was able to ambulate with a cane, had no swelling or discoloration, and that he had minimal tenderness to palpation on either side in his left ankle. *Id.*; Feinberg Decl. ¶ 26, Ex. B at AGO 00046-00050. Defendant had no further contact with Plaintiff after September 13, 2018, as his PCP. Javate Decl. ¶ 15.

On September 24, 2018, Dr. Thornhill saw Plaintiff for another follow-up

7

appointment. Feinberg Decl. ¶ 27, Ex. B at AGO 00051. Thickened skin was again debrided. *Id.* Dr. Thornhill did not issue any recommendations about Plaintiff's pain medication or following up at that visit. *Id.*

According to the evidence submitted by Plaintiff, he was seen several more times by Dr. Thornhill during 2019 and 2020, specifically on "6/2/2019, 9/30/2019, 10/1/2019, 1/27/2020, 9/16/2022, where he recommended that patient be referred for pain management for the neuropathic pain in his left lower extremity." Dkt. No. 36 at 3, Ex. E (Dkt. No. 36 at 29-36). On February 20, 2020, Plaintiff was seen by Defendant Javate for a follow-up to the podiatry visit on January 27, 2020, with Dr. Thornhill, who recommended that prison officials evaluate him for pain management. *Id.*, Dkt. No. 36 at 38.

On February 28, 2020, Plaintiff's case was discussed in the Complex Patient Case Discussion/Clinical Team Education Conference, a group that discusses a number of complex patient care matters including serving as a pain management committee. Feinberg Decl. ¶ 31, Ex. B at AGO 00056-00057. The Committee found that there was no medical evidence that narcotics are superior to nonsteroidal anti-inflammatory drugs and Tylenol and that Plaintiff was seen to ambulate normally without cane and that is activities of daily living was not affected. *Id.* The Committee recommended not to prescribe narcotics and to continue nonsteroidal anti-inflammatory drugs and Tylenol. *Id.*

According to evidence submitted by Plaintiff, he was evaluated again by the Committee on February 10, 2021. Dkt. No. 36 at 39.

## II. Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof

8

at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted); Fed. R. Civ. P. 56(e). "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle Corporation Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252). "The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252). If the nonmoving party fails to make this showing, "the moving party is

9

entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id*. at 631.  It is not the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Id*. If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See id.; see, e.g., Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

A. **Deliberate Indifference**

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id*. The following are examples of indications that a prisoner has a "serious" need for medical treatment: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997)

10

(en banc).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *See Farmer*, 511 U.S. at 837. The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he must actually draw that inference. *Id*. If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference, *see Toguchi v. Chung*, 391 F.3d 1051, 1058, 1059-60 (9th Cir. 2004); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970). In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that he or she chose this course in conscious disregard of an excessive risk to plaintiff's health. *Toguchi*, 391 F.3d at 1058; *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Farmer*, 511 U.S. at 837).

**B.     Analysis**

Plaintiff claims Defendant acted with deliberate indifference to his serious medical needs ever since he began seeing her in September 2017, for his chronic pain problems in his leg and foot. Dkt. No. 13 at 5. Plaintiff claims that Defendant Javate ignored an "'outside' podiatrist recommendation" regarding Plaintiff's pain medication. *Id.* Plaintiff also claims Defendant "willfully and maliciously, deliberately and unlawfully denied [him] of serious needed prescribed medication [*sic*]" because she has a "personal biasness [*sic*]

11

problem" with him. *Id.* at 7-8. Plaintiff claims he continues to suffer daily from excruciating pain and can barely perform any normal daily activities without his problems getting worse. *Id.* at 8. Based on the foregoing, Plaintiff claims Defendant Javate acted with deliberate indifference to his serious medical needs. *Id.*

Defendant asserts that the evidence shows she was not deliberately indifferent to Plaintiff's serious medical needs. Dkt. No. 30 at 15. Defendant asserts that the undisputed evidence indicates that she regularly evaluated and treated Plaintiff between September 2017 and September 2018. *Id.* Defendant admits that while Plaintiff's alleged chronic foot and leg pain would arguably qualify as a serious medical need, his allegations fail to establish that she acted with deliberate indifference. *Id.* Defendant asserts that Plaintiff's claim is mainly premised on his allegation that she denied him seriously needed prescription medications because of her personal bias against him, but that this claim amounts to no more than a difference in medical opinion, which does not rise to the level of a deliberate indifference claim. *Id.* Defendant asserts that she told Plaintiff he did not qualify for the opiate treatment which he continuously demanded during the course of her treatment because Plaintiff was functional in correctional setting, was able to ambulate and attend to his daily activities, and had a cane and orthotic shoes. *Id.* at 16. Nevertheless, Defendant attempted to accommodate his repeated demands by submitting three separate requests to appear before the Committee. *Id.* Furthermore, Defendant asserts that she requested referrals to a podiatrist for Plaintiff three times, and as a result, Plaintiff was seen by Dr. Thornhill, a podiatrist. *Id.* With respect to Plaintiff's claim that Defendant ignored an outside podiatrist's recommendations, Defendant asserts that such allegations are merely a difference in medical opinion or a disagreement over a matter of medical judgment which are insufficient to sustain a deliberate indifference claim. *Id.* Lastly, Defendant asserts Plaintiff's lay opinion about the reasonableness of her treatment are improper. *Id.* at 16-17. In contrast, Defendant submits Dr. Feinberg's medical opinion that Plaintiff was offered timely, adequate, and appropriate medical attention and care and

that the course of treatment was medically acceptable, and that Defendant acted in Plaintiff's best interest in not acquiescing to his demands for opioid pain medication. *Id.* at 17.

In opposition, Plaintiff maintains that his allegations are sufficient to state an Eighth Amendment deliberate indifference claim and that there remain genuine issues of material facts "that has either been overlooked or totally ignored." Dkt. No. 35 at 8. Plaintiff claims that there is no dispute that Defendant knew the extent of his medical condition based upon several x-rays that were taken during 2017 and 2018. *Id.* at 2. Plaintiff asserts that he was seen several times by Dr. Thornhill during 2019 and 2020, and that the podiatrist repeatedly recommended that Plaintiff be referred for pain management. *Id.* at 3, Ex. E (Dkt. No. 36 at 31-35). Plaintiff claims that he was not evaluated for pain management until February 10, 2021, at which time the Committee determined that he "did not meet criteria for CRPS." *Id.* at 4. Plaintiff claims that his "medical and physical condition diagnosis of treatment strategies has [fallen] below the standard the overall practice of evidence-based medicine and has denied Plaintiff adequate medical treatment." *Id.*

In reply, Defendant asserts that Plaintiff's opposition fails to refute her defense that she was not deliberately indifferent to Plaintiff's medical needs. Dkt. No. 47 at 1. Defendant points out that Plaintiff's opposition is mostly a recitation of case law without any specific facts supporting a finding of deliberate indifference. *Id.* Defendant argues that Plaintiff neglects to refute that in an effort to address his chronic pain in his leg and foot, she saw him on six occasions between September 2017 and September 2018, and that she treated his complaints through physical examinations, referral to a podiatrist, ordering an EKG, venous doppler exam, and x-rays, as well as prescribing Pamelor, increasing dosage when needed, then changing medication to Tegetrol, and later offering Gabapentin and Elavil. *Id.* at 3. She also attempted to accommodate his demand for opiate treatment by submitting his request to the Committee on three separate occasions. *Id.*

13

After a careful review of the submitted papers and evidence, construed in the light most favorable to Plaintiff, the Court finds there is no genuine dispute of material fact with respect to the Eighth Amendment claim against Defendant Javate. Plaintiff claims Defendant Javate deliberately denied him adequate pain medication because of a personal bias against him. Dkt. No. 13 at 7-8. However, there is no evidence that her treatment plan was motivated by a personal bias. Rather, Plaintiff's medical records indicate that Defendant Javate saw Plaintiff six times over the course of a year while she was his PCP. *See supra* at 3-7. During that time, she did not ignore Plaintiff's complaints of chronic pain but prescribed what she believed was appropriate medication, starting with Pamelor. *Id.* at 4. When Plaintiff complained the medication was not working, Defendant responded by increasing the dosage and then changing the prescription to a different medication, even though she noted that Plaintiff was not fully compliant with the prescribed medication. *Id.* at 5, 6. When Plaintiff had exhausted all formulary medication with relief, Defendant submitted a nonformulary request for Gabapentin, which was denied by Dr. Bright; there is no evidence that Defendant Javate had anything to do with that decision. *Id.* Even though she knew that Plaintiff did not qualify for opioids, Defendant decided to request that his case be reviewed by the Committee on September 20, 2017, March 6, 2018, and July 2, 2018. *Id.* at 4, 5, 6. There is no evidence that any delay in being seen by the Committee was caused by Defendant Javate.[5] Based on this evidence, it cannot be said that Defendant Javate was aware that Plaintiff faced a substantial risk of serious harm with respect to his pain management and disregarded that risk by failing to take reasonable steps to abate it. *See Farmer*, 511 U.S. at 837. Rather, she responded to Plaintiff's complaints by

---

[5] Plaintiff submits several declarations from inmates to support his claims. Dkt. No. 36 at 67-69. However, the information contained in these declarations is largely irrelevant to Plaintiff's personal claims against Defendant and contain hearsay. Hearsay evidence is inadmissible at trial and thus may not be considered on summary judgment. *See Orr v. Bank of America, NT & SA*, 285 F.3d 764, 778-80 (9th Cir. 2002) (upholding the exclusion of evidence submitted in opposition to a motion for summary judgment because those exhibits contained inadmissible hearsay).

prescribing what she believed was appropriate pain medication and thereafter continued to make adjustments to it based on his needs.

Furthermore, the evidence does not establish that Defendant ignored Plaintiff's request for a podiatry referral; rather, she submitted the request after their first meeting. *See supra* at 4. The first request was denied because Dr. Bright wanted Plaintiff to first be seen by the orthotics department; accordingly, it cannot be said that Defendant Javate was responsible for the denial. *Id.* After Plaintiff was seen by orthotics without improvement, Defendant put in another request for a podiatry referral, which was approved; Plaintiff saw Dr. Thornhill for the first time on March 26, 2018. *Id.* at 5. Defendant then submitted a request for a follow-up after Plaintiff's first appointment with Dr. Thornhill on March 27, 2018, and then another one several months later on July 2, 2018. *Id.* at 5-6. Accordingly, Plaintiff's claim that Defendant ignored his requests for a podiatry referral is not supported by the record. The same is true with respect to his claim that Defendant Javate ignored the podiatrist's recommendations regarding his pain management. The last time Defendant saw Plaintiff as his PCP was on September 13, 2018. *Id.* at 6. Up until that time, Dr. Thornhill made no recommendations with regards to Plaintiff's pain management. Rather, it was not until Plaintiff's appointment a year later, on September 30, 2019, that Dr. Thornhill began to recommend "consultation for possible increasing pain medication." Dkt. No. 36 at 31. By that time, Defendant Javate was no longer Plaintiff's PCP, and there is no evidence that she was aware of such a recommendation from Dr. Thornhill and yet failed to act. Rather, the evidence submitted by Plaintiff shows that she was not aware until February 20, 2020, during a follow-up appointment for his podiatry visit with Dr. Thornhill. Dkt. No. 36 at 38. However, the progress notes provided by Plaintiff are incomplete as he only provides the first page for this visit, such that it is unknown what action Defendant took based on that visit. Without such information, there is no evidence that Defendant failed to take reasonable steps to abate a substantial risk of serious harm. Furthermore, the notes indicate that Dr. Thornhill had "advised the prison staff to evaluate

him for pain management through his injury." *Id.* Accordingly, there is no evidence to suggest that Defendant Javate was aware that she needed to act to abate further risk of harm to Plaintiff where the notes indicated that prison staff had already been advised about the situation. In other words, it cannot be said that Defendant Javate both knew of facts from which the inference could be drawn that Plaintiff was at an excessive risk of further pain, that she drew that inference at that visit, and yet failed to act to abate that risk. *See Farmer*, 511 U.S. at 837. Moreover, the evidence shows that shortly after this last visit with Defendant Javate, Plaintiff's case was discussed by the Committee on February 28, 2020. *See supra* at 8. The Committee recommended that narcotics not be prescribed. *Id.* Accordingly, it cannot be said that Defendant Javate acted with deliberate indifference at the last visit with Plaintiff on February 20, 2020, to delay treatment for Plaintiff's pain management.

What remains of Plaintiff's claim is a mere disagreement with Defendant Javate's chosen course of treatment which simply does not give rise to a § 1983 claim. *See Franklin*, 662 F.2d at 1344. Plaintiff has not shown that her course of treatment rather than his preferred request for narcotics was medically unacceptable under the circumstances. On the contrary, it cannot be said that Defendant Javate's decision with respect to Plaintiff's pain management was unreasonable where Plaintiff did not qualify for opioid treatment because he was functional in a correctional setting, able to ambulate and attend to activities of daily living, and also had the use of a cane and orthotic shoes. *See supra* at 2-3. Rather, the evidence shows that Defendant took available steps to abate Plaintiff's pain by prescribing appropriate formulary medication and then adjusting the dosages to see if it would be more effective in response to Plaintiff's persistent complaints. Furthermore, the evidence shows that Defendant, despite her difference in opinion, went ahead and submitted Plaintiff's case to the Committee for review. Plaintiff points to no evidence indicating that the delay in his case coming before the Committee was caused by Defendant. Based on these facts, Plaintiff has failed to show that Defendant Javate chose

16

her course of treatment in conscious disregard of an excessive risk to his health. *Toguchi*, 391 F.3d at 1058.

Based on the undisputed facts, Defendant Javate has shown there is an absence of a genuine dispute of material fact with respect to the Eighth Amendment claims against her. *See Celotex Corp.*, 477 U.S. at 323. Plaintiff has failed to meet his burden of identifying with reasonable particularity the evidence that precludes summary judgment, *see Keenan*, 91 F.3d at 1279, or submit evidence from which a jury could reasonably render a verdict in his favor, *In re Oracle Corporation Securities Litigation*, 627 F.3d at 387. Accordingly, Defendant Javate is entitled to summary judgment. *See Celotex Corp.*, 477 U.S. at 323.

## CONCLUSION

For the reasons stated above, Defendant Dr. R. Javate's motion for summary judgment is **GRANTED**.[6] Dkt. No. 30. The Eighth Amendment deliberate indifference claim against her is **DISMISSED** with prejudice.

Plaintiff's motion for a "court order to go pro se" is DENIED as moot. Dkt. No. 60.

This order terminates Docket Nos. 30 and 60.

**IT IS SO ORDERED.**

Dated: __March 7, 2022_____

BETH LABSON FREEMAN
United States District Judge

Order Granting MSJ
PRO-SE\BLF\CR.20\00680Whitley_grant-msj

---

[6] Because the Court finds that no constitutional violation occurred, it is not necessary to reach Defendant's qualified immunity argument.

17